309 Ga. 337
FINAL COPY

S19G0852.  MIDDLETON v. THE STATE.

BETHEL, Justice.

After a jury trial, Appellant Derrick Leonard Middleton was found guilty of one count of hijacking a motor vehicle, one count of theft by receiving by retaining the stolen vehicle,[1] and several other crimes relating to a 2014 armed robbery and carjacking. Middleton filed a motion for new trial, which was subsequently amended, contending, among other things, that the verdicts for hijacking a motor vehicle and theft by receiving that vehicle were mutually exclusive and, consequently, that any judgment entered on these verdicts is void. The trial court denied Middleton's motion, and the Court of Appeals affirmed the trial court's denial in part,[2] holding

---

[1] Middleton was charged with theft by receiving *by retaining* the same vehicle he was charged with hijacking: "Middleton . . . did then and there unlawfully retain stolen property, to wit: a 2008 Honda Element . . . which he knew was stolen, said property not having been retained with the intent to restore it to said owner[.]"

[2] Middleton was also convicted of, among other things, three counts of possession of a firearm during the commission of a felony. The Court of Appeals concluded that the trial court should have merged Middleton's convictions on

that Middleton had waived the issue of mutually exclusive verdicts as to hijacking a motor vehicle and theft by receiving the same motor vehicle by failing to object to the verdicts at the time they were rendered. See *Middleton v. State*, 348 Ga. App. XXVII (Case No. A18A2035) (February 25, 2019) (unpublished).

We granted certiorari, posing two questions: (1) whether a defendant must object to the form of the verdicts at the time they are rendered in order to assert on appeal that convictions are mutually exclusive and (2) whether convictions for hijacking and theft by receiving the same vehicle are mutually exclusive. The parties suggest, and this Court agrees, that the answer to the first question is no. With respect to the second question, we conclude that convictions for hijacking and theft by receiving the same vehicle are

---

Count 2 (possession of a firearm during the commission of armed robbery) and Count 7 (possession of a firearm during the commission of aggravated assault), and therefore vacated Middleton's convictions as to those counts and remanded the case for resentencing. See *Middleton*, 348 Ga. App. XXVII. Middleton's convictions for armed robbery (Count 1), possession of a firearm during the commission of hijacking a motor vehicle (Count 4), two counts of aggravated assault (Counts 5 and 6), fleeing or attempting to elude (Count 9), speeding (Count 10), two counts of obstruction of an officer (Counts 11 and 12), driving without a license (count 13), and possession of a firearm by a convicted felon (Count 14) are not challenged on certiorari and are unaffected by our decision.

mutually exclusive. We therefore reverse the judgment of the Court of Appeals in part and remand the case for further proceedings.

1. *Background and procedural history.*

As set forth by the Court of Appeals, in the light most favorable to the jury's verdict, the evidence presented at trial showed the following:

> [T]he victim arrived at her apartment in Savannah at approximately 2:45 a.m. on February 15, 2014. As she sat in her car listening to a news broadcast on the radio, she saw a man dressed in dark clothing walking down the street "looking super shady." She flashed her headlights to alert the man that he was being watched; the man looked at her briefly and continued walking. She then gathered her belongings, exited her vehicle, and heard the man saying something to her. He asked her for directions to Oglethorpe Street, and then pulled out a handgun. The victim immediately dropped her belongings, and the man grabbed her purse and her keys, saying "I know where you live now." The man entered the victim's car; the victim protested and approached the vehicle, and the man replied, "[y]ou'll get your car back. I only need it for a few hours." The man then told the victim, "[y]ou can come with me. I lick good p—y." As he started to drive away with the driver's side door open, he pinned the victim against a small tree with the vehicle. The man then drove forward, the victim freed herself, and the man drove away.
> Officers later spotted the stolen vehicle on Interstate 16 near Savannah and initiated a pursuit of the vehicle.

The vehicle sped away, but was stopped a short time later when the vehicle ran over "stop sticks." The vehicle crashed into the median wall and the driver fled into a wooded area in the median. Officers soon captured the driver and identified him as Middleton. The victim identified Middleton from a photographic lineup, and two mobile telephones belonging to the victim, and clothing worn by Middleton as described by the victim, were found during a search of Middleton's residence.

(Footnote omitted.) *Middleton*, 343 Ga. App. XXVII, slip op. at pp. 1-3.

2. *A defendant is not required to object to the form of the verdicts in order to assert on appeal that his convictions were mutually exclusive.*

Middleton argues that he was not required to object at trial to the receipt of the verdicts in order to preserve his claim because the verdicts were mutually exclusive and therefore void. The Court of Appeals did not address the issue of whether guilty verdicts for hijacking a motor vehicle and theft by receiving were mutually exclusive. Instead, the Court of Appeals determined that, because Middleton failed to object to the form of the verdict for hijacking a motor vehicle, he had waived "any complaint that the verdict was inconsistent, confusing, or otherwise irregular." (Citation and

punctuation omitted.) *Middleton*, 348 Ga. App. XXVII, slip op. at 5 (1) (a).

"The term 'mutually exclusive' generally applies to two guilty verdicts that cannot legally exist simultaneously. In such cases, where it is both legally and logically impossible to convict on both counts, a new trial should be ordered." (Citation, punctuation and emphasis omitted.) *McElrath v. State*, 308 Ga. 104, 110 (2) (b) (839 SE2d 573) (2020). "'[W]here there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and trial court.'" (Citations omitted.) Id. This Court has held accordingly that "judgment[s] entered on mutually exclusive verdicts [are] void." *State v. Owens*, 296 Ga. 205, 212 (3) (b) (766 SE2d 66) (2014). Because mutually exclusive verdicts are void, they may be subsequently challenged even when an objection on that basis was not made at trial. See *State v. Springer*, 297 Ga. 376, 378 (1) n.2 (774 SE2d 106) (2015) ("[W]e

reject [the] suggestion that defendants should be allowed to accept mutually exclusive verdicts despite the inherent error."); *Owens*, 296 Ga. at 211-212 (3) (a) (mutually exclusive verdicts are void even where the verdicts are returned and the jury is dismissed before the parties and the trial court realize that the verdicts are mutually exclusive). See also *Nazario v. State*, 293 Ga. 480, 485 (2) (b) (746 SE2d 109) (2013) (A void conviction "requires the reviewing court to vacate the conviction . . . even if the error was not raised in the trial court."); *Benchmark Builders v. Schultz*, 289 Ga. 329 (1) (711 SE2d 639) (2011) ("[A] party does not waive an objection to a verdict that is void, as opposed to voidable, by failing to object to the verdict form or the verdict as rendered before the jury is released."); *Flores v. State*, 277 Ga. 780, 787 (596 SE2d 114) (2004) (Carley, J., concurring) ("[T]he defendant who does not object to the erroneous charge can still raise the mutually exclusive verdicts issue on appeal."), overruled on other grounds by *Springer*, 297 Ga. at 383 (2).

Here, Middleton first argued that the verdicts were mutually

exclusive, and thus void, in his amended motion for new trial. This Court has already held that void convictions "may be challenged in any proper proceeding." *Nazario*, 293 Ga. at 485 (2) (b).[3] And a motion for new trial is a proper proceeding for challenging a void criminal judgment. See *von Thomas v. State*, 293 Ga. 569, 572 (2) (748 SE2d 446) (2013) ("[A] claim that a conviction was unlawful must be asserted by a motion for new trial, direct appeal from the judgment of conviction, extraordinary motion for new trial, motion in arrest of judgment, or petition for the writ of habeas corpus."). Because Middleton was not required to object to the form of the verdicts in order to assert in his motion for new trial and on appeal that his convictions were mutually exclusive, we reverse the portion of the Court of Appeals' opinion that holds to the contrary.

In so doing, we recognize that this Court's 2013 holding in

---

[3] The State argues, with no citation to authority, that there should be two exceptions to this principle: (1) if a defendant is advised on the record that the verdicts are mutually exclusive, and chooses to accept those verdicts, then future challenge should not be allowed; and (2) a defendant should not be allowed to challenge mutually exclusive verdicts after his first appeal of right. We find no support for either proposition.

*Nazario* (and our subsequent holdings in *Owens* and *Springer*) effectively overruled this Court's prior decision in *DeLeon v. State*, 289 Ga. 782 (716 SE2d 173) (2011). See *White v. State*, 305 Ga. 111, 122 n.10 (823 SE2d 794) (2019) ("When a high court finds discordant opinions among its own . . . precedents the court generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding." (citation and punctuation omitted; emphasis in original)). In *DeLeon*, this Court, citing only a general waiver case about waiver of a constitutional claim under *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), held that the defendant waived the argument on appeal that his convictions for reckless conduct and aggravated battery were mutually exclusive because he did not raise the issue before the trial court. See *DeLeon*, 289 Ga. at 784 (7). However, *DeLeon*'s holding that a defendant may waive the ability to challenge mutually exclusive verdicts, which are void, ignored this Court's prior holdings that a void conviction may be challenged in a proper proceeding even where no error was raised in the trial court. See,

e.g., *Curtis v. State*, 275 Ga. 576 (571 SE2d 376) (2002), overruled on other grounds by *Williams v. State*, 287 Ga. 192, 194 (695 SE2d 244) (2010). In *Curtis*, this Court held that the issue of merger cannot be waived because a conviction which should have merged into another is a void conviction, thereby overruling a line of Court of Appeals cases holding to the contrary. See 275 Ga. at 576-577 (1) (noting that this "line of cases [was] based on the general proposition of appellate law that issues not raised in the trial court will not be considered on appeal"). *DeLeon* has never been cited for this proposition about waiver of mutually exclusive verdicts, and two years after *DeLeon*, *Nazario* followed *Curtis* and the long line of cases by this Court holding that the customary waiver rule does not apply to void convictions. See *Nazario*, 293 Ga. at 485 (2) (b) (collecting cases). *Nazario*'s reasoning was then followed in *Owens* and *Springer* in dealing with mutually exclusive verdicts. Thus, *DeLeon*'s holding regarding waiver is an outlier, and to the extent it deviated from prior precedent, it was tacitly overruled by *Nazario*, *Owens*, and *Springer*.

Likewise, we now explicitly overrule Court of Appeals decisions, including those relied upon by that court in this case, that held — without citing cases involving void verdicts — that a criminal defendant waived the ability to challenge mutually exclusive verdicts by not objecting at the time the verdicts were rendered. See *Mathis v. State*, 343 Ga. App. 206, 212 (2) n.9 (807 SE2d 4) (2017) (quoting only *Smith v. State*, 282 Ga. App. 339 (638 SE2d 791) (2006), for the proposition that "'[a] defendant waives any argument that the verdict contains mutually exclusive findings or is otherwise inconsistent, confusing, or irregular if he fails to object to the form of the verdict'"); *Smith*, 282 Ga. App. at 341 (1) (same, citing *Webb v. State*, 270 Ga. App. 817 (608 SE2d 241) (2004) and *Wilkes v. State*, 210 Ga. App. 898 (437 SE2d 837) (1993)); *Webb*, 270 Ga. App. at 818 (2) (holding that failure to object to the form of the verdict constituted a waiver of any objection on the ground that the verdicts were mutually exclusive, citing only *Ellison v. State*, 265 Ga. App. 446, 448 (3) (594 SE2d 675) (2004), a case regarding a verdict that allegedly was "inconsistent, confusing, or otherwise irregular");

*Wilkes*, 210 Ga. App. at 899 (1) (citing no authority for the proposition that "failure to object to the form of the verdict [as mutually exclusive] contributed to any error, therefore, Wilkes cannot be heard to complain on appeal").

In determining that a defendant may waive the ability to challenge mutually exclusive verdicts, it appears that the Court of Appeals relied on a series of its own prior cases that held that a defendant's failure to object to the verdict waives any objection that the verdict was "inconsistent, confusing, or otherwise irregular." See, e.g., *Ellison*, 265 Ga. App. at 448 (3); *Mayorga v. State*, 225 Ga. App. 496, 497 (484 SE2d 292) (1997) (holding that "appellant waived any such assertion [that the conviction was inconsistent] by failing to object to the form of the verdict at the time it was rendered"); *Bissell v. State*, 153 Ga. App. 564, 566-567 (2) (266 SE2d 238) (1980) ("The general rule in civil cases is that any irregularity in the form of a verdict is waived in the absence of objection at the time of its rendition because any formal error can be corrected before the jury is discharged. We know of no reason to apply a lesser standard in

criminal prosecutions."). But in holding that a defendant may waive the ability to challenge mutually exclusive verdicts, the Court of Appeals improperly applied *Ellison*, *Mayorga*, and *Bissell*. Mutually exclusive verdicts are not merely inconsistent, confusing, or otherwise irregular — they are void. See *Jackson v. State*, 276 Ga. 408, 410 (2) n.3 (577 SE2d 570) (2003) ("Mutually exclusive verdicts, which cannot both stand, result in two positive findings of fact which cannot logically mutually exist. Inconsistent verdicts, which do not introduce invalidity, bespeak a positive finding of fact as to one charge and the failure to make a positive finding of fact as to the other." (citation and punctuation omitted)), overruled on other grounds by *Springer*, 297 Ga. at 383 (2). And "a party does not waive an objection to a verdict that is void . . . by failing to object to the verdict form or the verdict as rendered before the jury is released." *Benchmark Builders*, 289 Ga. at 330 (1). Thus, while *Ellison*, *Mayorga*, and *Bissell* correctly state the law with regard to verdicts that are merely inconsistent, confusing, or irregular, to the extent those decisions can be read to suggest that a defendant may waive

the ability to challenge mutually exclusive verdicts by failing to object at the time the verdicts were rendered, we hereby disapprove of them.

3. *Convictions for hijacking a motor vehicle and theft by receiving by retaining that same motor vehicle are mutually exclusive.*

We now examine the two criminal statutes at issue in this case. In so doing, we determine that, on the facts before us, the guilty verdicts for both hijacking a motor vehicle and theft by receiving by retaining that same motor vehicle are mutually exclusive.

In determining the meaning of a statute, "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 306 Ga. 829, 834 (3) (834 SE2d 27) (2019). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." Id. In addition, courts generally "should avoid

a construction that makes some language mere surplusage." (Citation and punctuation omitted.) Id. at 840 (3).

As with many criminal offenses, theft offenses in Georgia trace their roots to English common law. Under the common law, larceny required a non-consensual, felonious taking and carrying away of goods belonging to another. See 4 William Blackstone, Commentaries on the Laws of England 229-234 (1st ed. 1769). Meanwhile, any subsequent receiver of those stolen goods was punishable only as an accessory to that crime, and accessories were required to "not [be] the chief actor in the offence, nor present at its performance. . . ." Id. at 235. Thus, under the common law, a person could not be convicted for both taking and receiving the same property. See *Redding v. State*, 192 Ga. App. 325, 328 (384 SE2d 910) (1989) (Beasley, J., dissenting) ("[T]he common law version of [theft by receiving] [covered] a type of accessory after the fact. Theft was then a felony, accessory after the fact a misdemeanor." (punctuation omitted)).

The common law crime of theft by receiving was codified in

Georgia in the Code of 1833, §§ 28 and 29, which distinguished between the principal thief and the subsequent receiver:

> Sec. 28. If any person shall buy or receive any goods, chattels, money, or other effects, that shall have been stolen or feloniously taken from another, knowing the same to be stolen or feloniously taken, such person shall be taken and deemed to be an accessory after the fact, and shall receive and suffer the same punishment as would be inflicted on the person convicted of having stolen or feloniously taken the said goods, chattels, money, or effects, so bought or received.

> Sec. 29. If the principal thief or thieves cannot be taken, so as to be prosecuted and convicted, it shall be lawful to prosecute any person buying or receiving any goods, chattels, money, or effects, stolen or feloniously taken by such principal thief or thieves, knowing the same to be stolen or feloniously taken, as for a misdemeanor, and, on conviction, such person shall be punished as prescribed in the preceding section; and a conviction under this section shall be a bar to any prosecution under the 28th section.

The theft by receiving statute was amended several times, in ways not pertinent here, before undergoing a substantial revision in 1968 as part of the General Assembly's comprehensive revision of Georgia's criminal statutes.[4] Throughout this pre-1968 period,

---

[4] See Code 1863, §§ 4382, 4383; Code 1868, §§ 4420, 4421; Code 1873, §§ 4488, 4489; Code 1882, §§ 4488, 4489; Penal Code 1895, §§ 171, 172; Penal Code 1910, §§ 168, 169; Code 1933, §§ 26-2620, 26-2621; Code 1933, § 26-1806.

Georgia courts held that a person could not be convicted for both taking and receiving the same property. See *Minor v. State*, 58 Ga. 551, 554 (4) (1877) ("When the strong and decided weight of the evidence . . . is, that the cow was stolen, not by the prisoner, but by others . . . and brought to his premises in his absence, that he there, after the larceny was complete, received the animal . . . his offense, under the Code, is not that of a principal felon. . . . [I]f he did not procure [the larceny] to be committed, and yet knew the animal to be stolen, he is guilty as accessory after the fact, or of the equivalent misdemeanor of receiving stolen goods, knowing them to be stolen."); *Stanley v. State*, 97 Ga. App. 828, 829 (2) (104 SE2d 591) (1958) ("It has almost universally been held, under both common-law and statutory principles, that one cannot be convicted of receiving stolen goods to the theft of which he was a principal. . . .").

In 1968, the General Assembly repealed former Code § 26-2620, the then-operative version of the theft by receiving statute, and enacted what is now OCGA § 16-8-7, which provides:

(a) A person commits the offense of theft by

> receiving stolen property when he receives, disposes of, *or retains* stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.
>
> (b) In any prosecution under this Code section it shall not be necessary to show a conviction of the principal thief.

(Emphasis supplied.)

Because the act of receiving (or buying) stolen property occurs at a particular moment in time, under the prior version of the theft by receiving statute, if a person learned that the property was stolen *after* receiving it, he could not be found guilty of that offense. See *Pat v. State*, 116 Ga. 92, 93 (42 SE 389) (1902) ("The gist of the offense of receiving stolen goods knowing them to be stolen is the felonious knowledge that the goods were stolen; and to constitute the offense, the person receiving the goods must have this knowledge *at the time of receiving them*." (emphasis supplied)); *Von Sprecken v. State*, 70 Ga. App. 222, 225 (28 SE2d 341) (1943) ("The gist of the offense [of receiving stolen property] is the actual state of the defendant's mind *when he purchases the property. . . .*" (emphasis

supplied)). Thus, prior to the addition of the word "retains" to the statute in 1968, no violation occurred when a defendant took possession of goods without knowing that they were stolen, and then, when informed of the fact, *retained* possession of them. See *Bonner v. State*, 339 Ga. App. 539, 543 (794 SE2d 186) (2016).

The General Assembly appears to have recognized this gap in the law. By adding the word "retains" to the statute in 1968, the General Assembly criminalized, for the first time, ongoing retention of property after the person receiving it learns that it was stolen. Thus, as the Court of Appeals has held, due to the addition of the word "retains" to the statute, a defendant who "knows or should know [property] was stolen" and retains possession of that property after gaining that knowledge can be prosecuted for theft by receiving. See *Bonner*, 339 Ga. App. at 542-544 (discussing the statutory history of OCGA § 16-8-7); *Poole v. State*, 144 Ga. App. 228, 230 (2) (240 SE2d 775) (1977) (the requirements of theft by retention are met when a person knowingly retains stolen property "even where guilty knowledge at the time of the acquisition of the

stolen property is not shown"); *Johnson v. State*, 135 Ga. App. 768, 769 (2) (219 SE2d 25) (1975) ("After the fact knowledge would tend to show a guilty retention under the Code and will sustain a conviction." (punctuation omitted)). We now agree with the Court of Appeals that the 1968 addition of "retains" in OCGA § 16-8-7 expanded the traditional law of theft by receiving to allow the prosecution of those who "innocently obtained property but chose to retain it after learning that it was, in fact, stolen." *Bonner*, 339 Ga. App. at 544.

Despite this series of decisions by the Court of Appeals discussing at length the history and development of the theft by receiving statute, Middleton argues that the word "retains" added nothing to the statute, and that the substance of OCGA § 16-8-7 (a) is the same as that embodied in the pre-1968 versions of the statute, even though the words used to convey the idea of theft by receiving have changed. However, such a reading would "violate[ ] a core principle of statutory interpretation that changes in statutory language generally indicate an intent to change the meaning of the

statute." (Citation and punctuation omitted.) *GeorgiaCarry.Org*, 306 Ga. at 836 (3). By adding the word "retains," the General Assembly broadened the theft by receiving statute to cover conduct not covered under its pre-1968 versions, i.e., a situation where a defendant took possession of the goods without knowing, at that time, that they were stolen, and, when later informed of the fact, *retained* possession of them. We accordingly decline to adopt Middleton's interpretation of OCGA § 16-8-7 (a).

Critical to the case before us, we also agree with the Court of Appeals that the addition of the word "retains" "[does] not change the character of a theft by receiving charge, which includes as an essential element of the crime that the goods had been stolen by some person other than the accused." (Citation and punctuation omitted.) *Bonner*, 339 Ga. App. at 545. This conclusion comports with a similar line of decisions in which the Court of Appeals has held that theft by receiving stolen property under the post-1968 statute and theft by taking that same property are mutually

exclusive.[5] See *Marriott v. State*, 320 Ga. App. 58, 63 (2) (a) (739 SE2d 68) (2013) ("[U]nder Georgia law, where a defendant has been charged with both theft by taking and theft by receiving, and the evidence would support a conviction for either, the jury should be charged that it can convict of either, but not both." (citation and punctuation omitted)); *Phillips v. State*, 269 Ga. App. 619, 631 (10) (604 SE2d 520) (2004) ("Theft by taking, OCGA § 16-8-2, and theft by receiving are two completely different crimes, having different elements, and are, in fact, so mutually exclusive that the thief and the receiver cannot even be accomplices, much less the same person." (citation and punctuation omitted)); *Purvis v. State*, 208 Ga. App. 653, 655 (433 SE2d 58) (1993) (same); *Brown v. State*, 199 Ga. App. 18, 21 (4) (a) (404 SE2d 154) (1991) (same); see also *Sosbee v. State*, 155 Ga. App. 196, 197 (270 SE2d 367) (1980) ("The offense of theft by receiving is intended to catch the person who buys or

---

[5] See OCGA § 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.").

receives stolen goods, as distinct from the principal thief. Evidence shows either that a defendant stole goods or that he received stolen goods with scienter of the theft. He does not, under any circumstances we can think of, commit both crimes at once." (citation omitted)). Because a conviction for theft by receiving — whether by receiving, disposing of, or retaining stolen property — necessarily entails a finding that the defendant was not the principal thief, such a conviction is legally and logically incompatible with a conviction on the same facts for another offense that requires the defendant to be the principal thief who took or obtained the same property from the victim of the theft. We applied similar reasoning in our decision in *Thomas v. State*, 261 Ga. 854, 855 (1) (413 SE2d 196) (1992), where we determined that a defendant could not be simultaneously convicted of both armed robbery of a vehicle and theft by receiving that same vehicle.

So we also decline to adopt the State's interpretation of OCGA § 16-8-7 (a). The State urges us to read "retains" so that knowing possession of stolen goods for any duration after the initial theft is

accomplished is sufficient to support a prosecution of the principal thief for both theft by taking and theft by receiving (by retaining). "Retains" is not defined in OCGA § 16-8-7 (a), and the Code does not otherwise provide an applicable definition for that word. A person, whether or not a principal thief, can ordinarily retain goods merely by failing to part with them. See Webster's New World Dictionary of the American Language 1242 (college ed. 1968) (defining "retain" as "1. to hold or keep in possession. 2. to keep in a fixed state or condition. 3. to continue to practice, use, etc. 4. to keep in mind. 5. to hire, or arrange in advance for the services of, by paying as a fee"); Black's Law Dictionary 1479 (4th rev. ed. 1968) (defining "retain" as "[t]o continue to hold, have, use, recognize, etc., and to keep").

Under the State's proposed interpretation, a person, including the principal thief, in possession of stolen goods who knowingly retains possession of those stolen goods for even one second also commits the crime of theft by receiving. Because the State provides no rational basis to determine how long after a theft a person must hold an item before theft by receiving based on "retention" begins, it

necessarily contends that every person guilty of theft by taking is also guilty of theft by receiving.

Contrary to the State's argument, however, there is no indication that the enactment of OCGA § 16-8-7 (a) altered the character of the crime of theft by receiving clearly established by both the common law and Georgia's case law so as to allow a person to be guilty of both theft by taking (or similar crimes involving a taking) and theft by receiving. The State's reading of "retains" would mean every theft would be a theft by taking and a theft by receiving. See *Ingram v. State*, 268 Ga. App. 149, 152 (5) (601 SE2d 736) (2004) (rejecting the State's argument that one could both steal something and retain the stolen good because that "would require concluding that the legislature intended to create a second crime that would apply to all defendants charged with theft"). And these crimes would not merge at sentencing, as the element of taking is different from the element of retaining. See *Hall v. State*, 286 Ga. 358, 362-363 (8) (687 SE2d 819) (2010) ("The rule prohibiting more than one conviction if one crime is included in the other does not apply unless

the same conduct of the accused establishes the commission of multiple crimes." (citation and punctuation omitted)).

Having determined that a conviction for theft by receiving under a theory of retention necessarily entails a finding that someone other than the defendant was the principal thief, we next turn our analysis to the crime of hijacking a motor vehicle, the other crime of which Middleton was found guilty in this case. The version of Georgia's motor vehicle hijacking statute in effect at the time of Middleton's crimes, former OCGA § 16-5-44.1 (b), stated:

> A person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so.

Under a plain reading of the statute, a person who "obtains a motor vehicle" from another by force, violence, or intimidation is necessarily a principal thief. See *Bruce v. State*, 252 Ga. App. 494, 497 (1) (a) (555 SE2d 819) (2001) (explaining that motor vehicle hijacking requires the vehicle be obtained from the victim).

By finding Middleton guilty of hijacking a motor vehicle, the

jury necessarily found that he *was* the principal thief of the motor vehicle, i.e., the person who "obtained" the motor vehicle from the victim by intimidation. By also finding him guilty of theft by receiving for retaining the same motor vehicle, the jury necessarily found that Middleton *was not* the principal thief of that vehicle. See *Bonner*, 339 Ga. App. at 545 ("[A] conviction under OCGA § 16-8-7 [for retaining stolen property] contains an implicit and necessary finding that [the defendant] was not the individual who stole the car."). The jury, in answering this crucial question — whether Middleton was the principal thief of the motor vehicle at issue — in both the affirmative and the negative, returned verdicts that are legally and logically irreconcilable. See *Thomas*, 261 Ga. at 856 (1) (concluding that it is not legally or logically "consistent for a jury to find that [the defendant] received stolen property (meaning . . . that he did not rob or steal it) and at the same time . . . find that [the defendant] stole the car"); *Frazier v. State*, 339 Ga. App. 405, 408 (1) (a) (793 SE2d 580) (2016) (Convictions for hijacking a car and theft by receiving for retaining the same stolen car are mutually exclusive

because "one cannot receive stolen property unless it is first taken by someone else."). Accordingly, Middleton's convictions on these two counts are mutually exclusive.

When a judgment of conviction is entered on a mutually exclusive verdict, the judgment is void. See *Owens*, 296 Ga. at 212 (3) (b). To remedy the void judgment, we must "reverse the judgment, set aside the verdicts at issue, and remand for new trial" on the counts at issue. Id. Because Middleton's conviction for hijacking is mutually exclusive with his conviction for theft by retaining, we reverse the judgment of the Court of Appeals in part and remand with direction to remand the case to the trial court to vacate the judgment of conviction in part and set aside the verdicts on these two counts.

*Judgment reversed in part and case remanded with direction. All the Justices concur.*

DECIDED JULY 1, 2020.
Certiorari to the Court of Appeals of Georgia — 348 Ga. App. XXVII.
*Robert L. Persse*, for appellant.
*Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney*, for appellee.