**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

April 26, 2024

# In the Court of Appeals of Georgia

A24A0157. HEWETT v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Justin Hewett on one count of child molestation and one count of sexual battery as a lesser-included offense of aggravated sexual battery. On appeal, Hewett challenges the sufficiency of the evidence supporting his convictions, and he further contends the trial court erred in failing to rule that the convictions were mutually exclusive, failing to find that his trial counsel rendered ineffective assistance, and failing to instruct the jury, *sua sponte*, on simple battery as a lesser-included offense of child molestation. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2019, Hewett—who was 17 years old at the time—lived with his grandparents.[2] And during this time period, two of Hewett's younger cousins—four-year-old L. C. and her twin brother—frequently came over to the grandparents' home to visit and occasionally spend the night on the weekends.

On March 6, 2019, L. C. was at the grandparents' home to spend the night (without her brother). And at some point that afternoon, L. C. came out of Hewett's room—where he was playing video games—and told her grandmother that Hewett had just touched her "no-no," which was the term she used to refer to her vagina. The grandmother immediately went into Hewett's room to confront him about L. C.'s allegation, but Hewett claimed that he may have accidentally touched her privates while helping pull up her pants. And in light of Hewett's response, the grandmother took no further action at that time, and L. C. spent the night as planned.

The next morning, L. C.'s mother went to the grandparents' home to pick up her daughter. And shortly after she entered the home, L. C., unprompted, repeated

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

[2] Hewett had lived with his grandparents all of his life—having been adopted by them not long after he was born.

her allegation that Hewett touched her "no-no" the previous day. The grandmother quickly admitted L. C. told her about the incident right after it happened, and that when she confronted Hewett, he claimed he accidentally touched L. C. while they were engaging in horseplay. The mother then went into Hewett's room to confront him, at which point Hewett repeated his explanation that he accidentally touched L. C. during horseplay, after which he brusquely left his room.

Subsequently, L. C.'s mother took her daughter home, but she noticed that L. C. seemed unusually quiet and clingy. An later that evening, after L. C. took a shower, she provided more details about the incident, claiming that Hewett pulled down her pants and placed his finger in her "no-no." Based on this additional information, L. C.'s father contacted law enforcement; and the next day, L. C.'s mother took her to a local child-advocacy center for a forensic interview. But during that interview, L. C. did not repeat her outcry; and that same day, she underwent a physical examination, which neither confirmed nor excluded the possibility of sexual abuse. At the conclusion of the examination, however, as the nurse examiner reminded L. C. that no one should touch her privates, she spontaneously replied that Hewett had done so.

Approximately one week later, after being advised of his rights, Hewett agreed to an interview with law enforcement. In the interview, Hewett relayed to the investigator what he initially told his grandmother and L. C.'s mother—that he may have accidentally touched L. C.'s private area while engaging in horseplay. But then he admitted this was not truthful and told the investigator that L. C. came out of his bathroom with her pants tangled up, and in trying to help her pull them up, he accidentally poked her privates, causing her to say "ow." The investigator then asked why he changed his story, and Hewett replied that he was scared. Following the interview, the investigator placed Hewett under arrest.

The State charged Hewett, via indictment, with one count of child molestation and one count of aggravated sexual battery. The case then proceeded to trial, during which the State presented the foregoing evidence, including a video recording of Hewett's interview with law enforcement. At the conclusion of the trial, the jury found Hewett guilty of both charged offenses.

Hewett then filed a motion for new trial, arguing, *inter alia*, that his counsel rendered ineffective assistance. The trial court held a hearing on the matter, during which Hewett's former counsel and his grandmother testified. When the hearing

concluded, the trial court took the issue under advisement, but it ultimately denied Hewett's motion for new trial. This appeal follows.

1. Hewett first contends the evidence was insufficient to support his convictions. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] Significantly, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] Bearing these guiding principles in mind, we

---

[3] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[4] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury have found the essential elements of the crime beyond a reasonable doubt).

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

turn to Hewett's specific challenge to the sufficiency of the evidence supporting his convictions.

The version of OCGA § 16-6-4 (a) (1) applicable at the time of the subject incidents provided that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ."[6] And the applicable version of OCGA § 16-6-22.1 (b) provided that "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person."[7]

In this matter, Count 1 of the indictment charged Hewett with child molestation by alleging that on March 6, 2019, he "then and there did commit an immoral and indecent act to [L. C.], a child under the age of 16 years, with the intent to arouse and

---

[6] See OCGA § 16-6-4 (a) (1) (2009). The statute has been amended twice in the last two years, but neither of those amendments having any bearing on this appeal. See Ga. L. 2023, Act 347, § 3-7; Ga. L. 2022, Act 648, § 1.

[7] See OCGA § 16-6-22.1 (b) (2006). This statute has also been amended recently, but again, that amendment has no bearing on this appeal. See Ga. L. 2021, Act 16, § 1.

satisfy the sexual desires of himself by touching said child's vagina with his finger . . . ." Count 2 charged Hewett with aggravated sexual battery by alleging that on March 6, 2019, he "then and there did intentionally penetrate the sexual organ of [L. C.] with his finger, a foreign object, without the consent of said person . . . ." Here, the State presented evidence that Hewett touched L. C.'s vagina with his finger; and when confronted, provided conflicting accounts of how the incident occurred. Of course, the victim's testimony alone is "sufficient to sustain a conviction."[8] As a result, given L. C. and the outcry witnesses' testimony, the evidence was sufficient to support Hewett's convictions on charges of child molestation and sexual battery.[9]

Nevertheless, Hewett argues that the evidence was insufficient to support his convictions because the State failed to disprove that the touching was accidental or to prove it was done to satisfy his sexual desires. Put another way, he claims the State

---

[8] *Powell v. State*, 335 Ga. App. 565, 567 (1) (782 SE2d 468) (2016); *see Miller v. State*, 359 Ga. App. 380, 383 (1) (857 SE2d 830) (2021) (explaining victims' testimony alone was sufficient to support convictions for, *inter alia*, child molestation).

[9] *See McCurdy v. State*, 359 Ga. App. 885, 886-87 (1) (b) (860 SE2d 172) (2021) (holding evidence that defendant touched minor victim's vagina with his hand was sufficient to support his conviction of child molestation); *Alford v. State*, 320 Ga. App. 523, 523-525 (1) (738 SE2d 124) (2013) (concluding evidence that defendant touched young girl's vagina with his hand was sufficient to support his conviction on charge of sexual battery).

failed to prove he possessed the requisite intent. But intent, which is a mental attitude, is "commonly detectable only inferentially, and the law accommodates this."[10] And while a person is not presumed to "act with criminal intention, intent is a question of fact to be determined upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[11]

In this case, the jury heard Hewett's assertion that his touching of L. C.'s privates was accidental, and the trial court instructed the jury on the law regarding intent and accident, explaining that a person cannot be found guilty of any crime

---

[10] *Parrott v. State*, 318 Ga. App. 545, 552 (3) (736 SE2d 436) (2012) (punctuation omitted); *see also DeLong v. State*, 310 Ga. App. 518, 520 (1) (714 SE2d 98) (2011) (holding criminal intent found even where, *inter alia*, defendant claimed he could not remember how he ended up in bed with his underwear pulled down, next to a minor child who had what appeared to be fecal matter smeared on her buttocks); *Andrew v. State*, 216 Ga. App. 427, 427 (454 SE2d 542) (1995) (noting that this Court has held that it can be "inferred from the fact that the defendant exposed himself to a child that he had the intent to arouse or satisfy his sexual desires.").

[11] *Parrott*, 318 Ga. App. at 552 (3) (footnote and punctuation omitted); *see also* OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.").

committed by accident. As a result, whether Hewett's intentions were innocent as he claimed, or were instead to

> arouse his own sexual desires as found by the jury, was peculiarly a question of fact for determination by the jury[,] and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak the verdict will not be set aside on that ground.[12]

Given these circumstances, the jury could certainly infer that Hewett possessed the requisite intent, and therefore, the evidence sufficiently supported his convictions.[13]

2. Hewett also claims the trial court erred in failing to rule that the child-molestation and sexual-battery convictions were mutually exclusive and, thus, invalid. Again, we disagree.

---

[12] *Parrott*, 318 Ga. App. at 553 (3) (punctuation omitted); *see also Arnold v. State*, 249 Ga. App. 156, 158 (545 SE2d 312) (2001) (same).

[13] *See Collins v. State*, 276 Ga. App. 358, 359-60 (1) (623 SE2d 192) (2005) (holding evidence was sufficient to show that defendant acted with sexual intent when he touched victim's vagina, so as to support conviction for child molestation, even though defendant claimed he touched victim only to keep her from falling from a four-wheeler); *Wiley v. State*, 271 Ga. App. 393, 395 (1) (609 SE2d 731) (2005) (concluding evidence was sufficient to show that defendant touched his daughter's vagina with intent to arouse or satisfy his sexual desires, so as to support conviction for child molestation, even though defendant claimed that he touched his daughter for medical reasons).

9

The term "mutually exclusive" generally applies to two guilty verdicts that "cannot legally exist simultaneously";[14] and in such cases, when "it is both legally and logically impossible to convict on both counts, a new trial should be ordered."[15] So, when verdicts are mutually exclusive, a guilty verdict on "one count logically excludes a finding of guilt on the other."[16] Indeed, when convictions are mutually exclusive, it is insufficient to merely set aside the lesser verdict, because to do so is to "speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and trial court."[17] Judgments entered upon such verdicts, then, are void.[18]

---

[14] *Middleton v. State*, 309 Ga. 337, 339 (2) (846 SE2d 73) (2020) (punctuation omitted); *accord Rutland v. State*, 315 Ga. 521, 523 (1) (883 SE2d 730) (2023); *McElrath v. State*, 308 Ga. 104, 110 (2) (b) (839 SE2d 573) (2020).

[15] *Middleton*, 309 Ga. at 339 (2) (punctuation omitted); *accord McElrath*, 308 Ga. at 110 (2) (b).

[16] *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003) (punctuation omitted), *overruled on other grounds by State v. Springer*, 297 Ga. 376 (774 SE2d 106) (2015); *accord Nalls v. State*, 304 Ga. 168, 174 (3) (815 SE2d 38) (2018); *Tepanca v. State*, 297 Ga. 47, 49 (3) (771 SE2d 879) (2015).

[17] *Middleton*, 309 Ga. at 339 (2) (punctuation omitted); *accord McElrath*, 308 Ga. at 110 (2) (b); *Dumas v. State*, 266 Ga. 797, 799 (1) (471 SE2d 508) (1996).

[18] *Middleton*, 309 Ga. at 339 (2). Because such judgments are void, "they may be subsequently challenged even when an objection on that basis was not made at

Turning to the particular offenses at issue, we begin by looking to the statutory language for each. And in doing so, we necessarily begin our analysis with "familiar and binding canons of construction."[19] Suffice it to say, in considering the meaning of a statute, our charge is to "presume that the General Assembly meant what it said and said what it meant."[20] Toward that end, we must afford the statutory text its plain and ordinary meaning,[21] consider the text contextually,[22] read the text "in its most

---

trial," as is the case here. *Id.* (punctuation omitted); *see Philmore v. State*, 300 Ga. 558, 558 (796 SE2d 652) (2017) ("Although this issue . . . was raised by Appellant for the first time on appeal, it is preserved for our review as Georgia law recognizes that a sentence which is not allowed by law is void and its illegality may not be waived." (punctuation omitted)).

[19] *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 51 (1) (806 SE2d 215) (2017) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[20] *Monumedia II, LLC*, 343 Ga. App. at 51-52 (1) (punctuation omitted); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013); *Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[21] *Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527 (2015) ("A statute draws its meaning, of course, from its text." (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the

natural and reasonable way, as an ordinary speaker of the English language would,"[23]

and seek to "avoid a construction that makes some language mere surplusage."[24] Put

somewhat more concisely, when the language of a statute is "plain and susceptible of

only one natural and reasonable construction, courts must construe the statute

accordingly."[25]

---

fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning . . . ." (punctuation omitted)).

[22] *Monumedia II, LLC*, 343 Ga. App. at 52 (1); *see Arizona v. Inter Tribal Council of Arizona, Inc.*, 1 U.S. 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)).

[23] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a); *Holcomb*, 329 Ga. App. at 518 (1).

[24] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord In the Interest of L.T.*, 325 Ga. App. at 592; *Holcomb*, 329 Ga. App. at 518 (1).

[25] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1); *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397 (2013), *superseded by statute on other grounds as recognized by Estrada-Nava v. State*, 332 Ga. App. 133 (771 SE2d 28) (2015); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

Here, the applicable iteration of OCGA § 16-6-4 (a) (1) provided that a person commits child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" And the applicable version of OCGA § 16-6-22.1 (b) provided that "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." And when comparing these two statutes, it is readily apparent that sexual battery requires proof of a fact that the offense of child molestation does not: lack of consent. Additionally, the offense of child molestation requires proof of a fact that the offense of sexual battery does not: the intent to arouse or satisfy the sexual desires of either the child or the person.[26] Even so, Hewett argues his sexual-battery conviction means, logically, that the jury found he did *not* possess the requisite intent to arouse or satisfy his sexual

---

[26] *See Cantrell v. State*, 360 Ga. App. 862, 868 (4) (862 SE2d 329) (2021) (holding the offenses of child molestation and sexual battery based on the same conduct, nevertheless, required proof of different elements and, therefore, did not merge for sentencing purposes); *Hogg v. State*, 356 Ga. App. 11, 15-16 (2) (a) (846 SE2d 183) (2020) (concluding the offenses of child molestation and aggravated sexual battery based on the same conduct did not merge for sentencing purposes because they required proof of different facts).

desires to support a child molestation conviction. But this inferential leap falls short, as the applicable sexual-battery statute requires no specific mindset at all, but rather, only an intent to complete the physical contact. Needless to say, possessing such general intent in no way *precludes* also having the *specific* intent to satisfy one's sexual desires. And in fact, multiple guilty verdicts for "the same conduct that are based on varying levels of mens rea are not mutually exclusive."[27] Accordingly, the trial court did not err in declining to rule that Hewett's convictions were mutually exclusive.

3. Hewett further contends the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to present impeachment evidence on his behalf. Yet again, we disagree.

It is well established that to evaluate Hewett's claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[28] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood

---

[27] *Hinkson v. State*, 310 Ga. 388, 392 (2) (850 SE2d 41) (2020) (punctuation omitted); *accord Springer*, 297 Ga. at 382 (1).

[28] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

14

that, but for counsel's errors, the outcome of the trial would have been different."[29]

Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[30] As a result, this burden, "though not impossible to carry, is a heavy one."[31] Indeed, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[32] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[33] And decisions regarding trial tactics and strategy may form the basis for an

---

[29] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[30] *McAllister*, 351 Ga. App. at 93 (6); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017); *Lawson v. State*, 365 Ga. App. 87, 95 (3) (877 SE2d 616) (2022).

[31] *Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013).

[32] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[33] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016); *accord Lawson*, 365 Ga. App. at 95 (3).

ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[34] So, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[35] With these guiding principles in mind, we turn to Hewett's specific claim of ineffective assistance of counsel.

Hewett maintains his trial counsel rendered ineffective assistance by failing to investigate if L. C. had a penchant for dishonesty and that if he had done so, he could have presented testimony from L. C.'s grandmother (who—as noted *supra*— was also *his* grandmother, as well as his adoptive mother) and her brothers that she was often dishonest. Hewett further argues counsel had no strategic reason for not presenting such evidence. And indeed, the grandmother testified during the hearing on Hewett's

---

[34] *Lockhart*, 298 Ga. at 385 (2); *accord Redding v. State*, 297 Ga. 845, 850 (5) (778 SE2d 774) (2015).

[35] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

motion for new trial that L. C. often exaggerated about her brothers picking on her. The grandmother further testified that one of L. C.'s brothers told her that "[L. C.] lies all the time."

But setting aside any questions as to what extent the grandmother's testimony would have even been admissible at trial, Hewett's contention that his counsel's failure to present such evidence was not based on any strategy is belied by the record. During the hearing on Hewett's motion, trial counsel testified that his defense theory was that L. C. was too young to understand the difference between an accidental touching and a sexually inappropriate one, and that her mother—who apparently had been the victim of sexual abuse at some point in her past—was the only person aggressively pushing the more damaging details.[36] Trial counsel further testified that although he did not recall specifics, he recalled there may have been some statements from family members concerning L. C.'s lack of honesty, but added that his "theory of defense would not have attacked the child." And when pushed on this issue, trial counsel reiterated that his strategy was to show L. C. did not understand the difference between an accidental and inappropriate touching.

---

[36] No evidence that L. C.'s mother was the victim of past sexual abuse was discussed, much less admitted, at trial.

Given our review of the record, Hewett cannot show that trial counsel's affirmative, strategic decision not to attack L. C.'s credibility "was so patently unreasonable that no competent attorney would have made the same decision."[37] To the contrary, trial counsel's strategy was perfectly reasonable in light of Hewett *admitting* to accidentally touching L. C.'s privates to his grandmother, L. C.'s mother, and during his interview with law enforcement. Accordingly, the trial court did not err in denying Hewett's ineffective-assistance claim.[38]

4. Finally, Hewett contends the trial court erred in failing to instruct the jury, *sua sponte*, on simple battery as a lesser-included-offense of child molestation. Once again, we disagree.

---

[37] *Seals v. State*, 350 Ga. App. 787, 799 (3) (c) (830 SE2d 315) (2019).

[38] *See Rodriguez-Nova v. State*, 295 Ga. 868, 871 (3) (763 SE2d 698) (2014) (finding trial counsel's decision to not call expert witness because the testimony would have been perceived as an unnecessary attack on the victim was not unreasonable and, thus, did not support ineffective assistance claim); *Seals*, 350 Ga. App. at 798-99 (3) (c) (holding that trial counsel's decision to refrain from objecting to arguably bolster testimony because he did not want to give the jury the impression that he was attacking the victim was not so unreasonable as to amount to ineffective assistance); *Leggett v. State*, 331 Ga. App. 343, 349 (5) (c) (771 SE2d 50) (2015) (concluding counsel's failure to raise hearsay objection to testimony given by 10-year-old child, who was at victim's house on night intruder molested victim because he did not want to appear to the jury as though he was unnecessarily attacking the child was reasonable trial strategy).

Prior to trial, Hewett submitted written charge requests, which included a request that the jury be instructed on sexual battery as a lesser-included-offense for both the child molestation and aggravated sexual battery charges. And during the charge conference, Hewett reiterated that request, and the trial court obliged, instructing the jury that it could find Hewett guilty of sexual battery as a lesser-included-offense for either of the offenses charged in the indictment. Nonetheless, Hewett argues the trial court erred by not also instructing the jury on simple battery as a lesser-included-offense of child molestation. But as Hewett concedes on appeal, there was no request for such a charge nor did he object when the trial court failed to provide it.

Given these circumstances, our review of this claim of error is significantly constrained. Indeed, under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[39] The failure to do so precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects

_____

[39] OCGA § 17-8-58 (a).

the substantial rights of the parties."[40] In such cases, the proper inquiry is whether "the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[41] Here, because Hewett failed to object to the trial court's jury instructions, our review is limited to consideration in this regard.[42] And as we have repeatedly emphasized, satisfying the plain-error standard is "difficult, as it should be."[43] The burden of establishing plain error, then, "falls

---

[40] OCGA § 17-8-58 (b); *see Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial); *Issa v. State*, 340 Ga. App. 327, 336 (4) (796 SE2d 725) (2017) (same).

[41] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Issa*, 340 Ga. App. at 336 (4); *see Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019) ("When reviewing a jury instruction for plain error that has not been affirmatively waived, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (punctuation omitted)).

[42] *See* OCGA § 17-8-58 (b); *see also Merritt v. State*, 292 Ga. 327, 330 (2) (737 SE2d 673) (2013) (noting that even an objection voiced at the charge conference does not preserve objections to the charges subsequently given and, thus, appellate review of such charges is limited to review for plain error).

[43] *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (punctuation omitted) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009)).

squarely on the defendant."[44] Importantly, this Court does not have to "analyze all elements of the plain-error test [when] an appellant fails to establish one of them."[45]

Turning to the offense on which Hewett argues the jury should have been instructed, OCGA § 16-5-23 (a) provides: ''A person commits the offense of simple battery when he or she either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another." But Hewett cites to no case authority to support his argument that a charge on simple battery was required in this instance. Of course, this failure is hardly surprising. This Court has questioned whether simple battery can *ever* be a lesser-included-offense to child molestation as a matter of law.[46] And of course, an

---

[44] *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017); *see Anderson v. State*, 299 Ga. 193, 196 (2) (787 SE2d 202) (2016) ("To show plain error, [the defendant] must establish not only that the jury instruction was erroneous, but also that it was obviously so and that it likely affected the outcome of the proceedings." (punctuation omitted)).

[45] *Payne v. State*, 314 Ga. 322, 325 (1) (877 SE2d 202) (2022).

[46] *See Brooks v. State*, 197 Ga. App. 194, 195 (1) (397 SE2d 622) (1990) (noting that *State v. Stonaker*, 236 Ga. 1 (222 SE2d 354) (1976), has been cited for the very broad proposition "that simple battery is not, as a matter of law, a lesser crime included in the crime of child molestation" (punctuation omitted)); *Griffith v. State*, 188 Ga. App. 789, 789 (374 SE2d 359) (1988) (construing *Stonaker* to hold that "simple battery is not, as a matter of law, a lesser crime included in the crime of child

error cannot be plain when there is "no controlling authority on point";[47] and an error is not plain under current law if "a defendant's theory requires the extension of precedent."[48] Needless to say, Hewett's theory that the jury should have been charged on simple battery as a lesser-included-offense of child molestation "would require an extension of, if not a departure from, existing case law."[49] As a result, the trial court's failure to provide such an instruction here cannot be characterized as plain error.[50]

---

molestation").

[47] *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018) (punctuation omitted); *accord Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016).

[48] *Herrera-Bustamante*, 304 Ga. at 264 (2) (b) (punctuation and citation omitted); *see Lyman v. State*, 301 Ga. 312, 317 (2) (800 SE2d 333) (2017) (explaining that when conducting review of asserted plain error in the context of jury instructions under OCGA § 17-8-58 (b), whether an error is clear or obvious is judged at the time of the appellate court's review).

[49] *Williams v. State*, ____ Ga. ____ (3) (896 SE2d 109, 117) (2023).

[50] *See Ash v. State*, 312 Ga. 771, 794-95 (5) (a) (865 SE2d 150) (2021) (holding that the trial court's failure to give a portion of a jury instruction was not plain error, in part, because the defendant "has pointed to no precedent holding that the omission of this sentence from the pattern instruction constitutes error under these circumstances"); *see also Ellington v. State*, 314 Ga. 335, 345 (3) (877 SE2d 221) (2022) ("[T]o the extent that [the defendant's] appellate argument is based on his contention that [a certain case] should be overruled, plain error cannot be based on an extension

For all these reasons, we affirm Hewett's convictions and the denial of his motion for new trial.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

of existing precedent, much less on the overruling of existing precedent." (citation and punctuation omitted)).