**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**July 1, 2025**

# In the Court of Appeals of Georgia

A25A0235. SPACKMAN v. THE STATE.

McFADDEN, Presiding Judge.

This appeal turns on whether a prosecution for a misdemeanor traffic offense commences on the date that a uniform traffic citation ("UTC") is issued for the offense, or on the date that the UTC is filed in a court of competent jurisdiction. This court has produced two conflicting lines of authority on the issue. As detailed below, some decisions hold that the prosecution commences on the date of the UTC's issuance and other decisions hold that the prosecution commences on the date of its filing. We hold that the prosecution commences on the date the UTC is filed, and we overrule decisions to the contrary.

From that holding it follows that the state commenced its prosecution of appellant Hank Carver Spackman for various misdemeanor traffic offenses outside of the applicable two-year limitation period. So the trial court erred in denying Spackman's plea in bar on that ground, and we reverse his convictions for the offenses.

1. *Procedural history*

On October 7, 2016, Spackman was arrested and issued UTCs for four misdemeanor traffic offenses. Those UTCs were never filed in a court of competent jurisdiction.[1] Instead, on October 11, 2018, the state filed an accusation accusing Spackman of the four offenses. Spackman filed a plea in bar, arguing that the prosecution did not begin until the state filed the accusation, which was outside the applicable two-year statute of limitation. See OCGA § 17-3-1 (e). The state countered that the prosecution began when the arresting officer issued the UTCs, which was within the two-year limitation period. The trial court denied Spackman's motion and, in a stipulated bench trial, found Spackman guilty of the offenses. Spackman appeals.

2. *Analysis*

---

[1] This fact was established by the trial court after we remanded an earlier appeal in this case for the trial court to determine whether or not the UTCs had been filed.

"Prosecution for misdemeanors shall be commenced within two years after the commission of the crime." OCGA § 17-3-1 (e). "'Prosecution' means all legal proceedings by which a person's liability for a crime is determined, commencing with the return of the indictment or the filing of the accusation, and including the final disposition of the case upon appeal." OCGA § 16-1-3 (14). So "[t]he two-year period in which a misdemeanor must be prosecuted runs from the date the offense is committed until the date the original accusation is filed." *State v. Dorsey*, 342 Ga. App. 188, 189 (1) (802 SE2d 61) (2017).

A UTC may function as an accusation in traffic cases. *Roberts v. State*, 280 Ga. App. 672, 674 (634 SE2d 790) (2006). OCGA § 40-13-1 provides that "[s]uch form shall serve as the citation, summons, accusation, or other instrument of prosecution of the offense or offenses for which the accused is charged[.]" It "summons the person accused of the traffic offense to appear in court on a specific date to answer the charges. Except for offenses tried in superior court, the accused may plead guilty or be tried for the traffic offenses charged in the citation without the state filing a formal accusation or indictment." *State v. Gerbert*, 267 Ga. 169, 170 (475 SE2d 621) (1996) (citations omitted).

Over the last several decades, a split has developed in our law as to when a prosecution commences when it is based upon a UTC rather than a formal accusation. Some decisions of this court hold that the prosecution commences with the filing of the UTC in a court of competent jurisdiction. See *Roberts*, 280 Ga. App. at 674 ("a traffic case commences with the filing of an accusation or UTC with the clerk of the court") (citation and punctuation omitted); *Clark v. State*, 236 Ga. App. 130, 131 (510 SE2d 616) (1998) ("when the [s]tate filed the uniform traffic citations with the court, they functioned as an accusation [and] commenced the prosecution"); *Millan v. State*, 231 Ga. App. 121, 122 (497 SE2d 664) (1998) ("a UTC may function in the place of an accusation to commence the prosecution only when it has been filed with the court by the [s]tate"); *Shire v. State*, 225 Ga. App. 306, 307 (1) (a) (483 SE2d 694) (1997) ("[g]enerally, a prosecution in state court commences with the filing by the solicitor of an accusation or UTC with the clerk of the court") (citation and punctuation omitted); *State v. Rish*, 222 Ga. App. 729, 731 (1) (476 SE2d 50) (1996) (same).

Other decisions of this court hold that a prosecution commences when a UTC is issued by a law enforcement officer. See *Barker v. State*, 370 Ga. App. 562, 565 (1) (898 SE2d 566) (2024) ("the prosecution commenced . . . when the sheriff's deputy

4

issued the UTC to [the defendant] following the traffic stop, not . . . when [a formal] accusation was filed"); *Williams v. Durden*, 347 Ga. App. 363, 366 (819 SE2d 524) (2018) ("The UTC issued to [the defendant] commenced her prosecution in municipal court. . . ."); *Forbes v. Smith*, 338 Ga. App. 546, 547 (819 SE2d 524) (2018) ("the UTC issued by the officer . . . commenced prosecution on the alleged misdemeanor traffic offense"); *Chism v. State*, 295 Ga. App. 776, 777 (1) (674 SE2d 328) (2009) ("A prosecution 'commences' when a charging instrument, such as an accusation, indictment or Uniform Traffic Citation ('UTC'), is issued[.]"); *Bishop v. State*, 261 Ga. App. 445 (1) (582 SE2d 571) (2003) ("A prosecution 'commences' when a charging instrument, such as an accusation indictment, or Uniform Traffic Citation ('UTC'), is issued."); *Poppell v. State*, 209 Ga. App. 91, 92 (432 SE2d 573) (1993) ("the prosecution was timely commenced by the issuance of the uniform traffic citation"); *Davis v. State*, 208 Ga. App. 845 (432 SE2d 229) (1993) ("the prosecution . . . was commenced upon the issuance of the uniform traffic citation"); *State v. Rustin*, 208 Ga. App. 431, 433 (2) (430 SE2d 765) (1993) (a prosecution "was commenced when [the defendant] was issued the uniform traffic citation").

Because these lines of conflicting decisions are not reconcilable, we must "follow that line of decisions appearing to be sound and . . . expressly overrule the conflicting decisions[.]" *Capers v. Bell*, 211 Ga. 502, 507 (6) (87 SE2d 85) (1955). For the reasons set forth below, we conclude that the decisions holding that a prosecution commences upon the filing of a UTC are better reasoned, so we follow those decisions and overrule the conflicting decisions.

First, the decisions holding that a prosecution commences upon the filing of a UTC are consistent with OCGA § 40-13-1, which provides that the UTC "shall serve as the . . . accusation," and OCGA § 16-1-3 (14), which provides that a prosecution "commenc[es] with . . . the *filing* of the accusation" (emphasis supplied), when those statutes are read together. The decisions reason, either expressly or implicitly, that if a UTC is functioning as an accusation under OCGA § 40-13-1, it should be treated as an accusation for purpose of determining the commencement of the prosecution under OCGA § 16-1-3 (14). See, e.g., *Roberts*, 280 Ga. App. at 674; *Millan*, 231 Ga. App. at 122; *Shire*, 225 Ga. App. at 307-308 (1) (a); *Rish*, 222 Ga. App. at 731-732 (1).

Second, viewing a prosecution to commence with the filing of a UTC, rather than its issuance, aligns with the longstanding principle that it is for the prosecutor to

6

decide whether and when to proceed with a prosecution. See generally *Bishop v. State*, 265 Ga. 821, 822 (1) (462 SE2d 716) (1995) ("from the beginning of our criminal justice system prosecutors have exercised the power of prosecutorial discretion in deciding which defendants to prosecute") (citation and punctuation omitted). "It is not true that a prosecution must proceed upon the uniform traffic citation that has initially been issued. . . ." *Ellerbee v. State*, 215 Ga. App. 102, 104 (3) (449 SE2d 874) (1994) (citation and punctuation omitted). Accord *Sevostiyanova v. State*, 313 Ga. App. 729, 741 (16) (722 SE2d 333) (2012). Under OCGA § 15-18-66 (b) (1), the solicitor-general has the authority to "make a prosecutorial decision" as to "every individual case for which probable cause for prosecution exists[.]"

Some of the decisions holding that a prosecution commences upon the filing of a UTC address this principle in their reasoning. We explained in *Shire v. State*, supra, that

> [t]here are many benefits to the solicitor, as the state prosecutor, determining whether a prosecution should proceed and when within the law it should do so. There are ethical considerations, which require the solicitor to insure that the evidence, such as lab reports, supports the charges prior to proceeding with a prosecution. Also, where . . . there are multiple offenses charged, the early prosecution of one charge . . . could

ultimately bar the prosecution of related charges, as multiple prosecutions of charges arising from the same incident are not generally allowed. The analysis and determination of such matters must be made by the solicitor. . . .

*Shire*, 225 Ga. App. at 308 (1) (a) (citation and punctuation omitted). See also *Millan*, 231 Ga. App. at 122-123; *Rish*, 222 Ga. App. at 731 (1). A prosecutor cannot exercise this role if the prosecution commences with the issuance of the UTC, which occurs without prosecutor input.

The decisions holding that a prosecution commences with the issuance of a UTC do not persuasively address either of these points. In the decision that appears to have begun this line of authority, *Rustin v. State*, supra, we acknowledged that "[a] prosecution is 'commenced' when an accusation or indictment is *filed*, . . . OCGA § 16-1-3 (14)[, and that certain traffic offenses] may be prosecuted in . . . state court on a uniform traffic citation, which constitutes the accusation. OCGA §[ ] 40-13-1[.]" *Rustin*, 208 Ga. App. at 433 (2) (citations omitted; emphasis supplied). But we nevertheless held, without further explanation or citation to authority, that the defendant's prosecution for such an offense "was commenced when he was *issued* the uniform traffic citation and complaint on [the day of the alleged offense]." Id.

(emphasis supplied.) We did not indicate in *Rustin* if or when the UTC had been filed with the court, nor did we explain why a UTC should be treated differently than an accusation in determining when a prosecution commenced (upon the issuance of the former and the filing of the latter). Id.

Most of the subsequent decisions in this line of authority point to *Rustin* or its progeny in support of the proposition that the issuance of the UTC commences the prosecution, with little to no additional rationale. See *Barker*, 370 Ga. App. at 565 (1) n. 12 & 13 (citing *Chism*, supra); *Chism*, 295 Ga. App. at 777 (1) (citing *Rustin*, supra); *Bishop*, 261 Ga. App. at 445 (1) n. 1 (citing *Rustin*, supra); *Davis*, 208 Ga. App. at 845 (citing *Rustin*, supra). See also *Williams*, 347 Ga. App. at 366 (citing *Forbes*, supra, and authority that a UTC may function as an accusation); *Forbes*, 338 Ga. App. at 547-548 (citing *Chism*, supra, and authority that a UTC may function as an accusation); *Poppell*, 209 Ga. App. at 92 (after citing authority for the proposition that a UTC may function as an accusation, holding without additional authority that the issuance of the UTC commenced the prosecution).

It is true, as the state notes, that expiration of the statute of limitation was not at issue in the cases that expressly hold that a prosecution begins upon the filing of a

9

UTC. See *Roberts*, 280 Ga. App. at 674-675 (double jeopardy); *Clark*, 236 Ga. App. at 131 (speedy trial); *Millan*, 231 Ga. App. at 122 (speedy trial); *Shire*, 225 Ga. App. at 307 (1) (speedy trial); *Rish*, 222 Ga. App. at 731-732 (1) (impact of prior dismissal of charges).

But in other cases in which we have applied that principle, we have applied it to rule on statute-of-limitation issues. See *Horner v. State*, 240 Ga. App. 1, 2 (1) (522 SE2d 483) (1999) (holding that it was a correct statement of law to charge the jury that it must find that the defendant committed the offense within two years preceding the swearing out of charges, which occurred on the date a UTC was filed with the court); *Weaver v. State*, 179 Ga. App. 641 (1) (347 SE2d 295) (1986) (holding that a prosecution was proper because "the [uniform traffic] citation was filed within the two-year [limitation] period").

And the state has offered no persuasive argument for why a prosecution upon a UTC should commence at the UTC's issuance for statute of limitation purposes but at its filing for other purposes, such as the attachment of speedy trial rights, which our Supreme Court has held occurs "when the [UTC] is *filed* with the court." *Clark v. State*, 271 Ga. 519, 519-520 (520 SE2d 694) (1999) (citation and punctuation omitted;

emphasis supplied). Accord *Gerbert*, 267 Ga. at 170. The underlying rationale is the same: because the UTC is functioning as an accusation, it should be treated as an accusation. See *Ghai v. State*, 219 Ga. App. 479, 479-480 (465 SE2d 498) (1995) (reading in pari materia the speedy trial statute, which provides that an accused's period for entering a speedy trial demand is triggered by the filing of an accusation, OCGA § 17-7-170 (a), and the statute permitting UTCs to function as accusations, OCGA § 40-13-1, to hold that "mere issuance of a uniform traffic citation, without subsequently filing it with the clerk of courts[,] is not sufficient to authorize the entry of a filed demand for speedy trial"). See also *Clark*, 271 Ga. at 520; *Hayek v. State*, 269 Ga. 728, 730 (3) (506 SE2d 372) (1998); *Gerbert*, 267 Ga. at 170; *State v. Bloodsworth*, 241 Ga. App. 840, 842 (528 SE2d 285) (2000).

We are not persuaded by the dissent's argument that decisions of our Supreme Court — *Clark*, supra, 271 Ga. 519; *Hayek*, supra, 269 Ga. 728; and *Gerbert*, supra, 267 Ga. 169 — compel us to follow the line of cases holding that a prosecution commences upon the issuance, rather than the filing, of a UTC. None of those decisions resolve the question of whether a statute of limitations is, in effect, tolled indefinitely because a UTC is sitting unfiled at the bottom of a desk drawer. Because

11

that question "was not at issue in [*Clark*, *Hayek*, and *Gerbert*, those cases] could not (and did not) decide the issue presented in this case." *Med. Center of Central Ga. v. Turner*, ___ Ga. ___ (___ SE2d ___) (Case No. S25G0132, decided June 24, 2025), slip opinion, p. 7.

Nor do they resolve whether, under OCGA § 40-13-1 and OCGA § 16-3-1 (14), a UTC must be filed with the trial court to commence a prosecution. All three decisions involved UTCs that were filed in the court, meaning that the effect of an *unfiled* UTC was not at issue in those decisions. See *Clark*, 271 Ga. at 519 ("Two uniform traffic citations were issued against Clark and *filed* in the State Court of Cobb County. . . .") (emphasis supplied); *Hayek*, 269 Ga. at 728 (concerning UTCs that were "*filed* with the state court clerk's office") (emphasis supplied); *Gerbert*, 267 Ga. at 169 ("The state *filed* a uniform traffic citation with the state court. . . .") (emphasis supplied).

As the dissent notes, those decisions all include language stating that their holdings, which concern when an accused's speedy trial rights attach in situations where the state has filed a UTC with the trial court, are "consistent with the cases holding that the prosecution of a traffic offense, for statute of limitation purposes,

begins when the state issues the [UTC]." *Clark*, 271 Ga. at 520 (citation and punctuation omitted); *Hayek*, 269 Ga. at 730 (3) (citation and punctuation omitted); *Gerbert*, 267 Ga. at 171. But "consistent with" does not mean "established by." The Court does not engage in any meaningful analysis of *Rustin* or its progeny in those decisions, and the "consistent with" is at least plausibly read to acknowledge doubt about the soundness of the rule established in *Rustin* but to stand for the proposition that it is not necessary in those cases to decide whether *Rustin* or its progeny were correctly decided. We decline to read those decisions to hold that a prosecution can commence without the filing of a UTC, in light of the plain language of OCGA § 40-13-1 that a UTC "shall serve as the . . . accusation" and the plain language of OCGA § 16-1-3 (14) that a prosecution "commenc[es] with . . . the *filing* of the accusation[.]"

Instead, we conclude that the statement in *Clark*, *Hayek*, and *Gerbert* concerning the rule set forth in *Rustin* and its progeny is dicta, because it "concern[s] some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (citation and punctuation omitted). "[A] court cannot reach a decision on a particular issue when that issue is not presented or implicated by the factual context

13

of the case being decided." *Med. Center of Central Ga.*, ___ Ga. at ___ (citation and punctuation omitted). Because the factual context of *Clark*, *Hayek*, and *Gerbert* did not present or implicate the particular issue central to this case, the Court "necessarily issued no holding on that issue." *Med. Center of Central Ga.*, supra at ___. As such, the statement in those cases concerning *Rustin* and its progeny does not control our determination of which of the two lines of authority we should follow in determining whether a UTC must be filed to commence a prosecution. See *Alexander v. State*, 313 Ga. 521, 529 (3) (870 SE2d 729) (2022) ("dicta is not binding on anyone for any purpose") (citation and punctuation omitted); see also *Med. Center of Central Ga.*, supra at ___.

For the reasons discussed above, we adhere to the holding in *Roberts*, 280 Ga. App. at 674, and the other cases cited above in that line of authority: a prosecution upon a UTC commences, for statute-of-limitation purposes, when the UTC is filed with the clerk of the trial court and is barred if it is not filed before expiration of the statute of limitation. We overrule any decisions of this court to the extent they hold otherwise, including *Barker*, 370 Ga. App. 562; *Williams*, 347 Ga. App. 363; *Forbes*,

14

338 Ga. App. 546; *Chism*, 295 Ga. App. 776; *Bishop*, 261 Ga. App. 445; *Poppell*, 209 Ga. App. 91; *Davis*, 208 Ga. App. 845; and *Rustin*, 208 Ga. App. 431.

This does not mean that a UTC *must* be filed before a person can be adjudicated for a traffic offense. OCGA § 40-13-3 provides that, "[e]xcept for offenses tried in the superior courts, all other courts having jurisdiction of the offense may proceed with the adjudication of the offenses contained within the complaint without the necessity of filing an indictment or other accusation in order to bring the accused to trial." Of course, if an adjudication occurs within the limitation period, the prosecution necessarily began within the limitation period.

In this case, the state failed to commence its prosecution against Spackman within the two-year limitation period set forth in OCGA § 17-3-1 (e), because it filed the accusation outside of that period and it never filed the UTCs. So the trial court should have granted Spackman's plea in bar on statute-of-limitation grounds.

*Judgment reversed. Brown, C.J., Doyle, P.J., Markle and Land, JJ., concur. Barnes, P.J., Hodges, Padgett and Davis, JJ., concur specially. Dillard, P.J., Rickman, P.J., Mercier, Gobeil, Pipkin, Watkins, JJ., dissent.*

15

# In the Court of Appeals of Georgia

A25A0235. SPACKMAN v. THE STATE.

HODGES, Judge, concurring specially.

It is never comfortable to take a position that appears to conflict with statements by our Supreme Court, even statements which are plainly dicta. Nor, however, is it comfortable or even correct to take a position contrary to our black-letter law. This case sits squarely between those two levels of discomfort.

As Presiding Judge Dillard recognizes in his thoughtful dissent, in three cases that involve the timing of speedy trial demands, our Supreme Court commented that "the prosecution of a traffic offense, for statute of limitation purposes, begins when the state *issues* the uniform traffic citation." (Emphasis supplied.) *Clark v. State*, 271

Ga. 519, 520 (520 SE2d 694) (1999) (remarking that "when a prosecution is commenced via uniform traffic citation, a formal accusation for the same charges at a subsequent term of court is superfluous"); accord *Hayek v. State*, 269 Ga. 728, 730 (3) (506 SE2d 372) (1998); *State v. Gerbert*, 267 Ga. 169, 171 (475 SE2d 621) (1996). While these comments constitute dicta because they did not control the outcome in any of the cases, see *Med. Center of Central Ga. v. Turner*, 2025 Ga. LEXIS 136, *5 (decided June 24, 2025), it is the type of definitively stated dicta that gives an intermediate appellate court pause when it appears to apply directly to a question presented in a pending appeal. But as the Supreme Court reiterated very recently, "language that sounds like a holding — but actually exceeds the scope of the case's factual context — is not a holding no matter how much it sounds like one." (Citation and punctuation omitted.) Id.

Further, from a purely functional standpoint, following such dicta would serve to render OCGA § 17-3-1 (e)'s two-year statute of limitation language mere surplusage, at least in the context of traffic citations, because the statute would be met immediately upon the issuance of a UTC. See generally *Middleton v. State*, 309 Ga. 337, 342 (3) (846 SE2d 73) (2020) (reiterating that "courts generally should avoid a

2

[statutory] construction that makes some language mere surplusage") (citation and punctuation omitted). Such a reading forecloses the possibility that the State would ever commence a prosecution outside the statute of limitation and would permit the State, at least theoretically, to wait many years beyond what a functional statute of limitation would and should preclude before filing formal charges. Further, blackletter law unequivocally provides: "'Prosecution' . . . commenc[es] with the return of the indictment or the *filing of the accusation*[.]" (Emphasis supplied.) OCGA § 16-1-3 (14). Were we to rely upon the Supreme Court's dicta to find that prosecution begins with the issuance of a UTC, we would once again render a portion of a statute mere surplusage. *Middleton*, 309 Ga. at 342 (3).

Following such dicta also would impinge upon prosecutorial discretion, as Presiding Judge McFadden's majority opinion recognizes. For example, our blackletter law discussing the duties and authority of solicitors general provides that "[n]o accusation, citation, or summons shall be considered filed *unless such filing has been done with the consent, direction, or approval of the solicitor-general*." (Emphasis supplied.) OCGA § 15-18-66 (b) (10). This statute indicates that a prosecution does not

commence upon the mere issuance of a UTC prior to any knowledge or involvement of the solicitor's office.

While, as both the majority and dissent aptly recognize, there are additional shadings on this issue provided by other statutes and other case law, I believe OCGA § 16-1-3 (14), Supreme Court dicta notwithstanding, is definitive.

For these reasons, I specially concur with the majority opinion.

I am authorized to state that Presiding Judge Barnes, Judge Padgett, and Judge Davis join in this special concurrence.

# In the Court of Appeals of Georgia

A25A0235. SPACKMAN v. THE STATE.

DILLARD, Presiding Judge, dissenting.

When does the prosecution of a misdemeanor traffic offense—via a uniform traffic citation—begin? Although this question seems relatively straightforward, I agree with the implication underlying the majority's opinion that Georgia jurisprudence on this issue is a bit of a mess. Even so, the Supreme Court of Georgia's decisions in *Clark v. State*[1] and *State v. Gerbert*[2] explicitly embrace what the majority characterizes as conflicting authority, and so those decisions preclude both my

---

[1] 271 Ga. 519 (520 SE2d 694) (1999).

[2] 267 Ga. 169 (475 SE2d 621) (1996).

interpretation of OCGA § 40-13-1 (at least in part) and the majority's plea to overrule

*State v. Rustin*[3] and its progeny.[4]

---

[3] 208 Ga. App. 431, 433 (2) (430 SE2d 765) (1993) (Blackburn, J.) (noting that the defendant's "prosecution . . . was commenced when he was issued the uniform traffic citation and complaint on September 30, 1988"), *superseded by statute as stated in Switlick v. State*, 295 Ga. App. 849 (2009).

[4] *See Barker v. State*, 370 Ga. App. 562, 564-65 (1) (898 SE2d 566) (2024) (Dillard, P.J.) (noting that "importantly, a uniform traffic citation serves as an accusation in any court having jurisdiction over the offense, except superior court" and "a prosecution 'commences' when a charging instrument, such as an accusation, indictment, or Uniform Traffic Citation ('UTC'), is issued, and continues until there has been a final disposition of the case . . . ." (cleaned up)); *Williams v. Durden*, 347 Ga. App. 363, 366 (819 SE2d 524) (2018) (Barnes, P.J.) (noting that "[t]he UTC issued to Durden on October 16, 2014 [by the responding officer] commenced her prosecution in municipal court for the traffic violation of following too closely"); *Forbes v. Smith*, 338 Ga. App. 546, 548 (790 SE2d 550) (2016) (Andrews, P.J.) (noting that "[t]he UTC issued to [appellee] commenced the prosecution and summoned her to the Recorders Court of DeKalb County . . . ."); *Chism v. State*, 295 Ga. App. 776, 777 (1) (674 SE2d 328) (2009) (Smith, P.J.) (noting that a "prosecution 'commences' when a charging instrument, such as an accusation, indictment, or Uniform Traffic Citation ('UTC'), is issued . . . ."); *Bishop v. State*, 261 Ga. App. 445, 446 (1) (582 SE2d 571) (2003) (Eldridge, J.) (noting that a "prosecution commences when a charging instrument, such as an accusation, indictment, or Uniform Traffic Citation . . . is issued and continues until there has been a final disposition of the case" (cleaned up)); *Poppell v. State*, 209 Ga. App. 91, 92 (432 SE2d 573) (1993) (Blackburn, J.) (noting that "[s]ince the uniform traffic citation contains an accusation and constitutes the commencement of the prosecution, the accusation subsequently filed by the solicitor's office is superfluous") (cleaned up); *Davis v. State*, 208 Ga. App. 845, 846 (432 SE2d 229) (1993) (Blackburn, J.) (noting that "the prosecution actually was commenced upon the issuance of the uniform traffic citation . . . .").

As the majority notes, we have what most logical people would view as conflicting lines of jurisprudence on this issue. On one side, there is *State v. Rish*[5] and its progeny,[6] which hold the prosecution begins with the actual filing of a UTC with the court. And on the other side is *State v. Rustin*[7] and its progeny,[8] which hold the prosecution begins once the UTC is issued.[9] This matters because OCGA § 17-3-1 (e) provides that "[p]rosecution for misdemeanors shall be commenced within two years

---

[5] 222 Ga. App. 729, 731 (1) (476 SE2d 50) (1996) (Blackburn, J.) ("Generally, a prosecution in state court commences with the filing by the solicitor of an accusation or UTC with the clerk of the court . . . .").

[6] *See Roberts v. State*, 280 Ga. App. 672, 674 (634 SE2d 790) (2006) (Bernes, J.) (holding that "a traffic case 'commences with the filing . . . of an accusation or UTC with the clerk of the court'" (citation omitted)); *Clark v. State*, 236 Ga. App. 130, 131 (510 SE2d 616) (1998) (Andrews, C.J.) (noting that "when the State filed the uniform traffic citations with the court, they functioned as an accusation, commenced the prosecution, and established the term of court at which the right to a speedy trial under § 17-7-170 attached"), *affirmed by* 271 Ga. 519 (520 SE2d 694) (1999); *Millan v. State*, 231 Ga. App. 121, 122 (497 SE2d 664) (1998) (Andrews, C.J.) (holding that a traffic case "commences with the filing . . . of an accusation or UTC with the clerk of the court"); *Shire v. State*, 225 Ga. App. 306, 307 (483 SE2d 694) (1997) (Eldridge, J.) (noting that "no case was pending against appellant, since no UTC, indictment, or other accusation had been filed with the court by the state") (emphasis omitted).

[7] *Supra* note 3.

[8] *Supra* note 4.

[9] *Id.*

after the commission of a crime." So, if the prosecution begins when a UTC is issued, the State *immediately* satisfies the two-year statute of limitation; but if the prosecution instead commences when a UTC is filed with the court, then it must be initiated before the expiration of that two-year period (*i.e.*, within two years from the date of filing).

In considering this issue, I begin my analysis by considering something the decisions highlighted in this dissent largely ignore: the relevant statutory language. The text of OCGA § 40-13-1 provides the UTC "shall serve as the citation, summons, accusation, or other instrument of prosecution of the offense or offenses for which the accused is charged, and as the record of the disposition of the matter by the court before which the accused is brought . . . ."[10] Indeed, as the text of OCGA § 40-13-1 makes clear, the UTC is not just a mere citation. It also serves as a *complaint*,[11]

---

[10] *See also* OCGA § 17-7-71 (b) (1) (A) ("In all misdemeanor cases arising out of violations of the laws of this state, relating to . . . the operation and licensing of motor vehicles and operators . . . the defendant may be tried upon the uniform traffic citation and complaint provided for in Article 1 of Chapter 13 of Title 40.").

[11] OCGA § 40-13-1 ("The commissioner of driver services shall develop a uniform traffic citation and *complaint* form for use by all law enforcement officers who are empowered to enforce the traffic laws and ordinances in effect in this state") (emphasis supplied)).

4

*summons*,[12] an *accusation*, or "other instrument of prosecution."[13] And importantly, each UTC "shall have a unique identifying number which *shall serve as the docket number for the court having jurisdiction of the accused*."[14] It is also notable that "courts having jurisdiction of the offense may proceed with the adjudication of the offenses contained within the complaint [*i.e.*, the UTC] without the necessity of filing an indictment or other accusation in order to bring the accused to trial."[15] Indeed, it is hard to read these statutory provisions and not conclude that the issuance of a UTC

---

[12] *See Forbes*, 338 Ga. App. at 547 (noting that "[w]here the UTC serves as the instrument of prosecution, the citation and complaint summons the person accused of the traffic offense to appear in court on a specific date to answer the charges") (cleaned up)); *see Gerbert*, 267 Ga. at 170 ("The citation and complaint summons the person accused of the traffic offense to appear in court on a specific date to answer the charges.").

[13] OCGA § 40-13-1.

[14] *Id.* (emphasis supplied).

[15] OCGA § 40-13-3; *see also* OCGA § 40-13-24 ("An indictment or accusation shall not be required against a defendant under this article, but a citation and complaint specifically setting out the charge shall be issued."); OCGA § 40-13-54 ("The *original* citation and complaint shall be sent by the officer issuing it to the traffic violations bureau of the court within 24 hours of the arrest. The defendant named in the citation shall be given the second copy. The officer issuing the citation and complaint shall retain one copy for himself or herself, and the court may, by order, provide that an additional copy shall be made for the use of any municipality in the county or the Department of Driver Services.") (emphasis supplied)).

results in the commencement of a prosecution.[16] The nature of this unique statutory

scheme, then, is such that the far better reading of OCGA § 40-13-1 is that the

---

[16] In concluding the prosecution of a UTC *always* begins when it is filed with the court, the majority relies heavily on OCGA § 16-1-3 (14), which is contained in the general definitions section of Georgia's Criminal Code. This statutory subsection defines "prosecution" as "all legal proceedings by which a person's liability for a crime is determined, commencing with the return of the indictment or *the filing of the accusation*, and including the final disposition of the case upon appeal." (Emphasis supplied). This is all well and good. But in my view, there is tension between the general definition of "prosecution" in OCGA § 16-1-3 (14) and the *specific* statutory provisions of OCGA § 40-13-1 outlined in this dissent. *See Glinton v. And R, Inc.*, 271 Ga. 864, 867 (524 SE2d 481) (1999) (noting that "specific statutes govern over more general statutes"); *Ga. Mental Health Inst. v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993) (noting that "a specific statute governs over a more general statute where they are in conflict"); *see also Montgomery Cty. v. Hamilton*, 337 Ga. App. 500, 507 (1) (788 SE2d 89) (2016) ("When there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." (punctuation omitted)); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 28 (1st ed. 2012) ("The general/specific canon . . . deals with what to do when conflicting provisions simply cannot be reconciled—when the attribution of no permissible meaning can eliminate the conflict. Which provision must yield? Or must they both be disregarded? . . . [T]he specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence.").

issuance of a UTC by a law-enforcement officer immediately commences the prosecution—for *all* purposes.[17]

But as the majority rightly notes, my reading and construction of OCGA § 40-13-1 is contradicted, at least in part, by a line of authority holding that the prosecution actually begins with the filing of a UTC with the court for purposes of a statutory speedy trial demand.[18] Specifically, in *Gerbert*, our Supreme Court held that the time for filing a *statutory speedy trial demand* begins when a UTC is filed with the court,[19]

---

[17] Needless to say, I do not share the majority's concerns about prosecutorial discretion being diminished if a prosecution begins when a UTC is issued by law enforcement, and not when it is filed with the court. The UTC system is designed—out of necessity—to delegate the initial prosecutorial authority for these offenses to law enforcement, and prosecutors are always free to exercise their considerable discretion in how they handle these cases after the UTC is issued. *See, e.g.*, OCGA § 40-13-1 ("The commissioner of driver services shall develop a uniform traffic citation and complaint form for use by all law enforcement officers who are empowered to enforce the traffic laws and ordinances in effect in this state."); OCGA § 40-13-3 ("Except for offenses tried in the superior courts, all other courts having jurisdiction of the offense may proceed with the adjudication of the offenses contained within the complaint without the necessity of filing an indictment or other accusation in order to bring the accused to trial."); OCGA § 40-13-24 ("An indictment or accusation shall not be required against a defendant under this article, but a citation and complaint specifically setting out the charge shall be issued.").

[18] *See supra* note 6 & accompanying text.

[19] *See Gerbert*, 267 Ga. at 170 ("Applying the plain language of the relevant statutes, we hold that the statutory right to demand a speedy trial of a traffic offense

7

and I cannot logically reconcile that *binding* holding with what I believe to be the better reading of OCGA § 40-13-1 *et seq.*—*i.e.*, that the prosecution begins for *all purposes* once the UTC is issued by law enforcement.[20] That said, what the majority fails to acknowledge is that *Gerbert* also forecloses its contention that a prosecution begins only when a UTC is filed with the court in *all* circumstances.

In *Gerbert*, after citing to both OCGA § 17-7-170 and OCGA § 40-13-1, our Supreme Court noted:

> Applying the plain language of the relevant statutes, we hold that the statutory right to demand a speedy trial of a traffic offense in state court

in state court attaches when the uniform traffic citation is filed with the court."); *Webb v. State*, 278 Ga. App. 9, 11 (2) (627 SE2d 925) (2006) (holding that a statutory speedy-trial demand is premature until a UTC is filed with the court, commencing the traffic case); *Lagyak v. State*, 245 Ga. App. 546, 548 (538 SE2d 467) (2000) ("A UTC functions as an accusation, and the right to a speedy trial attaches when the state files a UTC.").

[20] *See* Ga. Const., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Smith*, 308 Ga. App. 345, 352 (1) (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court."); *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law . . . ."); *see also* Kurt T. Lash, *Originalism, Popular Sovereignty, and Reverse Stare Decisis*, 93 VA. L. REV. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of precedent on lower courts," and that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").

attaches when the uniform traffic citation is filed with the court. If a court can adjudicate the charges in the citation without the filing of a formal accusation, then a defendant should be able to enter a speedy trial demand based solely on the citation.[21]

The *Gerbert* Court then explained, "[t]his holding presents a bright-line rule that fulfills the purpose of the speedy trial guarantee—the right to have charges brought against one disposed of not only while witnesses are available and their memories are fresh but also so that the deleterious effects of a pending charge on a defendant are lessened."[22] But rather than concluding on that point, the Court further asserted that its holding was "also consistent with the cases holding that the prosecution of a traffic offense, *for statute of limitation purposes, begins when the state issues the uniform traffic citation.*"[23] And in the accompanying footnote, the Court specifically cited *Rustin* as an example of such cases.[24]

---

[21] *Gerbert*, 267 Ga. at 170 (footnote omitted).

[22] *Id.* at 170-71 (footnote and punctuation omitted).

[23] *Id.* at 171 (footnote omitted) (emphasis added).

[24] *See id.* at 171 n. 10.

Two years later, in *Hayek v. State*,[25] the Supreme Court of Georgia cited its earlier holding in *Gerbert* that "the statutory right to demand a speedy trial of a traffic offense attaches when the UTC is filed with the court."[26] The *Hayek* Court again noted that this holding was "consistent with the cases holding that the prosecution of a traffic offense, for statute of limitations purposes, begins when the State issues the UTC."[27] One year after *Hayek*, our Supreme Court—this time in *Clark v. State*[28]—yet again confronted this issue and once again cited the *Gerbert* holding in its entirety.[29] And in doing so, the *Clark* Court lauded its earlier opinion, noting that "[t]he 'bright-line rule' announced in *Gerbert* is salutary."[30]

So, *three* separate opinions of the Supreme Court of Georgia have held that—for purposes of filing a statutory speedy trial demand—a prosecution begins when a UTC is filed with the court. And those same opinions have *explicitly* acknowledged case

---

[25] 269 Ga. 728 (506 SE2d 372) (1998).

[26] *Id.* at 730 (3) (punctuation omitted).

[27] *Id.* (punctuation).

[28] *See supra* note 1.

[29] *Clark*, 271 Ga. at 519-20.

[30] *Id.* at 520.

authority holding that the prosecution of a traffic offense—for statute of limitations purposes—begins when the State *issues* the UTC, but have nevertheless concluded this bright-line rule is entirely *consistent* with the plain language of the relevant statutes. As a result, while I may agree with the majority's lament that there is seemingly conflicting case authority on this issue, the Supreme Court of Georgia has thrice disagreed. We are constrained, then, to abide by that authority,[31] and the majority's labeling of the parts of those Supreme Court holdings with which it disagrees as mere dicta is, in my view, wishcasting and oversteps our remit as a court of intermediate appellate review.

For all these reasons, I respectfully dissent.


I am authorized to state Presiding Judge Rickman, Judge Mercier, Judge Gobeil, Judge Pipkin, and Judge Watkins join in this writing.

---

[31] *See supra* note 20 & accompanying text.